# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WAYNE R. ANDERSEN | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 04 C 4553 | DATE | October 19, 2004 |
| CASE TITLE | Clark Armond v. Officer Burwell, et al. | | |

MOTION: [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

DOCKET ENTRY:

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Plaintiff's motion for leave to proceed in forma pauperis [6-1] is granted. The trust fund officer at plaintiff's place of incarceration shall make deductions from plaintiff's institutional account and payments to the court as set forth in the order. This action is dismissed as frivolous pursuant to 28 U.S.C. § 1915A, terminating case. This dismissal counts as one of plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g). The clerk shall send a copy of this order to the trust fund officer at Illinois River Correctional Center.

(11) ■ For further detail see order attached to the original minute order.

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | OCT 21 2004 date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 8 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| KS | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CLARK ARMOND, | ) | |
| Plaintiff, | ) ) ) | No. 04 C 4553 |
| v. | ) ) | Judge Wayne R. Andersen |
| OFFICER BURWELL, et al, | ) ) | **DOCKETED** |
| Defendants. | ) ) ) | OCT 21 2004 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Clark Armond, a prisoner in the custody of the Illinois Department of Corrections, filed this *pro se* civil rights action under 42 U.S.C. § 1983 seeking $7.1 million in damages from the police officers who arrested him, the state's attorneys who prosecuted him, and his defense attorneys public and private, in a virtual "soup to nuts" attack on his criminal arrest, prosecution, conviction and appeal. For the following reasons, the court dismisses this action in its entirety.

Because Armond is a prisoner suing governmental employees, the court is required to review the complaint prior to service and dismiss any portion of the complaint it finds frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A. In determining whether the complaint states a claim upon which relief may be granted, the court applies the familiar standard employed in ruling upon a contested motion to dismiss under Rule 12(b)(6): the court accepts the allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Wynn v. Southward*, 251 F.3d 588, 591-92 (7th Cir. 2001).

The court is not, however, required to believe the unbelievable, and a claim based on incredible factual allegations should be dismissed as frivolous. *Gladney v. Pendleton Correctional Facility*, 302 F.3d 773, 774 (7th Cir. 2002). A claim will also be dismissed as frivolous if it is clear from the complaint and exhibits that a dispositive affirmative defense, such as limitations, would keep the claim from reaching first base. *Gleash v. Yuswak*, 308 F.3d 758, 760 (7th Cir. 2002).

## ALLEGATIONS OF THE COMPLAINT

Armond alleges he was arrested on December 7, 1996, by four Chicago police officers, defendants Burwell, Parks, Lewis and Oglesby, who kicked in Armond's door, searched Armond's home and "trashed" it, and deliberately inflicted pain on Armond when he asked to see an arrest or search warrant. Armond alleges Burwell and Parks conspired to fabricate a call to the 911 telephone emergency service complaining of an aggravated battery as a pretext for arresting him. Defendants Winstead and Habiak, also Chicago police officers, allegedly joined this conspiracy by "unlawfully subjecting [Armond] to an illegal photographing [sic] line up," Cmplt. ¶ 7, in which Armond was identified as the perpetrator of an armed robbery.

At a hearing on Armond's motion to quash his arrest and suppress evidence on December 16, 1997, Armond alleges that Burwell, allegedly in conspiracy with the assistant state's attorney, defendant Clarissa Palermo, gave false testimony to cover up the officers' arrest and search without probable cause. Judge Flannery of the Circuit Court of Cook County granted the motion to quash the arrest, stating that although the officers had probable cause to arrest Armond, they had not been justified in arresting him in his home without a warrant when they could have obtained one.

Judge Flannery suppressed shotgun shells found in Armond's home as fruits of the unlawful arrest, and asked Armond's public defender, defendant Steven Powell, what other evidence he was seeking to suppress. (Armond's public defender is identified in transcript excerpts attached to the complaint as "Stephen W. Power," but is consistently called "Powell" in the complaint.) Powell stated the he "was seeking to have suppressed the lineup procedure that was used with the witness Carlos Martinez as well as a statement that I received from Mr. Clark [sic]." Judge Flannery asked whether the statement was made at the police station. Told that it was, Judge Flannery denied the motion to suppress the statement and the lineup, because there had been probable cause to arrest Armond and only the officers' entry into his home had been unlawful.

Armond alleges that there was no such statement, that Powell conspired with Palermo, Burwell and Parks in saying there was, and that this statement prejudiced Armond before Judge Flannery by implying that Armond had confessed to a crime. Armond also alleges that Powell conspired with Palermo to have the case transferred to Judge Lawrence P. Fox, whom he alleges

2

was more sympathetic to the prosecution. Armond states he "had no knowledge of this transfer, how, who, or when this happen," Cmplt. ¶ 17, and alleges that this advanced Powell's own interest to Armond's detriment.

Armond further claims that Powell misled him to believe that Powell would "defend the proceedings" and "would subject state's case to adversary test." Cmplt. ¶18. Powell "failed to present any case law or cannons of law to defend every element of said proceeding," and Powell's misstatement "prejudiced plaintiff at a critical stage." *Id.* ¶ 20.

Armond and his family retained a private attorney, Rick Beuke, who began representing Armond in March of 1998, and whom Armond also names as a defendant. Armond alleges Beuke failed to investigate why his case was transferred from Judge Flannery after Judge Flannery's ruling in Armond's favor. Armond alleges that Beuke assured him and his family that because Armond's arrest had been quashed, the case should have been dismissed, and that he would bring a pretrial motion to challenge evidence obtained subsequent to Armond's arrest. Beuke "failed to present any evidence, case law cannons of law to defend every element of the proceedings to adversarial test." Cmplt. ¶ 31. Armond alleges that he had witnesses who would have testified in his behalf at trial, but Beuke did not call them, telling them they didn't need to testify. Armond also alleges Beuke failed to file an appellate brief on his behalf.

## ANALYSIS

Armond brings this action under 42 U.S.C. § 1983, which provides a cause of action for persons deprived of any right guaranteed by the Constitution or federal law by persons acting under color of state law. Although the potential claims in Armond's complaint suffer from other defects as well, each is defeated by its timing. Every claim has been brought either too late, after the expiration of the limitations period, or too soon, because it cannot be asserted while Armond's criminal conviction stands.

The limitations period for claims under § 1983 corresponds to the limitations period for personal injury claims under the law of the state where the injury occurred, *Wilson v. Garcia*, 471 U.S. 261, 280 (1985), and accordingly Illinois' two-year limitations period, 735 ILCS 5/13-202,

governs § 1983 claims arising in Illinois. *Henderson v. Bolanda*, 253 F.3d 928, 931 (7th Cir. 2001). The two-year limitations period commences when the claim accrues, that is, when the plaintiff can bring suit on it, and when a claim under § 1983 accrues is determined by federal common law. *Heard v. Sheahan*, 253 F.3d 316, 317-318 (7th Cir. 2001).

A claim under § 1983 normally accrues at the time the plaintiff knew or should have known that his constitutional rights have been violated. *Licari v. City of Chicago*, 298 F.3d 664, 668 (7th Cir. 2003). That is not always the case, however, when a § 1983 claim arises out of a criminal prosecution and conviction. The Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994), effectively divided claims arising out of a plaintiff's arrest and prosecution into two classes. If proof of the plaintiff's claim would necessarily imply the invalidity of his criminal conviction, he may not sue under § 1983 for damages resulting from that conviction until his conviction has been invalidated, either through state-court proceedings, executive pardon, or a federal writ of habeas corpus. The related civil claim accrues only if and when the conviction is invalidated, and the limitations period commences at that time. On the other hand, if proof of the plaintiff's claim would *not* necessarily invalidate a criminal conviction, it accrues in the manner of any other § 1983 claim. *See Wiley v. City of Chicago*, 361 F.3d 994, 996-97 (7th Cir. 2004), *cert. denied*, ___ S.Ct. ___, 2004 WL 2059429 (Oct. 4, 2004).

1. **Arrest**

We begin with Armond's claims arising from his arrest and the search of his home. Because Judge Flannery ruled that Armond's warrantless arrest and the search of his home violated the Fourth Amendment, it would appear that Armond has a valid claim under § 1983 against the arresting officers. However, the evidence found in that search was suppressed and did not contribute to Armond's conviction. Because proof that Armond's arrest and the search of his home violated the Fourth Amendment would not impugn Armond's conviction, his Fourth Amendment claims accrued at the time of his arrest, December 7, 1996, and are now time-barred.

## 2. Lineup

Armond does not say why he claims the photographic lineup was "illegal." Although a federal plaintiff may plead legal conclusions, the complaint should at least "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)(*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957). A lineup or a display of photographs for identification can support a claim for damages under § 1983 only if it violated an arrestee's constitutional right to a fair trial, i.e., it was unduly suggestive and was viewed by a witness who testified at the trial resulting in the arrestee's conviction. *See Hensley v. Carey*, 818 F.2d 646, 649 (7th Cir. 1987); *Alexander v. City of South Bend*, 256 F.Supp.2d 865, 877-78 (N.D.Ind. 2003). Consequently, if the lineup violated Armond's rights at all, it violated his right to a fair trial, and such a claim accrues only after any resulting conviction has been set aside. Armond has not alleged his conviction has been set aside, and the court takes judicial notice of Illinois Department of Corrections' records showing Armond serving a prison sentence for the conviction in question.

## 3. Suppression hearing

Armond's claim that defendant Burwell gave false testimony at the suppression hearing is defeated by his own allegation that Judge Flannery did not believe it; Burwell's alleged perjury caused Armond no injury. This claim is also defeated by a witness's absolute immunity from damage claims under § 1983 for perjured testimony, recognized by the Supreme Court with respect to trial testimony in *Briscoe v. LaHue*, 460 U.S. 325 (1983), and extended by the Seventh Circuit to pretrial proceedings in *Curtis v. Bembenek*, 48 F.3d 281, 285 (7th Cir. 1995). Absolute immunity also shields a prosecutor, such as defendant Palermo, from liability for presenting false testimony to the court, even if she "conspires" with the witness in that she knows the witness will lie. *Manning v. Miller*, 355 F.3d 1028, 1032 (7th Cir. 2004)(citing *House v. Belford*, 956 F.2d 711, 720 (7th Cir. 1992)). Armond claims Palermo presented "other illegal evidence" at the hearing, Cmplt. ¶ 14, but with no indication of what the evidence was or why it was illegal, this vague allegation cannot state a claim.

5

Armond next claims that Powell, his public defender, conspired with Palermo, Burwell and Parks to "alter the course of Judge Flannery's ruling" by asking Judge Flannery to suppress what Powell called "a statement that I received from Mr. Clark [sic]." Cmplt. Exh. A-3. Armond claims that Powell's mention of a "statement" hinted that Armond had confessed, and this induced Judge Flannery to deny the motion to suppress the lineup evidence. This is frivolous. If an intimation of the defendant's guilt invalidated a suppression hearing, there could be no suppression hearings. A judge asked to suppress evidence may infer that the evidence sought to be suppressed would tend to incriminate the defendant, and usually the connection between the evidence sought to be suppressed and the prosecution's case is obvious.

Armond argues that if he had given Powell a statement, it would have been protected by attorney-client privilege, and Powell should not have disclosed its existence. But Judge Flannery would have understood Powell's reference to "a statement that I received from [Armond]" to mean a statement Armond made, or allegedly made, that Powell had received, presumably from the prosecution. It is absurd to suggest that Judge Flannery would have thought Powell was inexplicably seeking to suppress a piece of evidence that was in his possession, not the state's, and would have been inadmissible anyway.

Because we must assume that Armond's allegations are true unless they are incredible, we must assume that Armond made no statement. Powell may have confused Armond's case with another one. But it is incredible, hence frivolous, to claim that Powell conspired with Palermo to induce Judge Flannery to refuse to suppress the lineup by mentioning a "statement," equally frivolous to claim that the mention of a "statement" influenced Judge Flannery's ruling. In any event, if Judge Flannery's ruling affected the outcome any claim would be barred by *Heck*; if it did not, Armond has suffered no injury.

### 4. Change of Judge

Armond's next claim, that Powell conspired with Palermo to have the case transferred to Judge Fox, also crosses the line between the unlikely and the incredible, as well as being similarly barred by *Heck*. Whatever the reason may have been that Judge Fox instead of Judge Flannery

6

was on the bench when Armond's case was called on January 20 and 21, 1998, Judge Fox made no rulings in Armond's case. The docket excerpts furnished by Armond show that his case was reassigned to Judge Stanley J. Sacks after Judge Fox granted Powell leave to file a petition for substitution of judge on January 21, 1998. Cmplt. Exhs. D-3, D-7, D-11. If, as Armond claims, Powell succeeded in prejudicing Judge Flannery against him, it would make no sense for Powell to then "conspire" to transfer the case to Judge Fox. And if Powell conspired to transfer the case to Judge Fox, it would make no sense for him to file a motion for substitution of judge immediately thereafter.

Armond claims that in "conspiring" to transfer the case "he made a choice advancing his own interest to the detriment of his client," Cmplt. ¶21, but nowhere alleges how this supposed conspiracy might have benefitted Powell. Not only has Armond alleged no facts to support a claim that Powell conspired with other defendants to injure him; he has alleged nothing suggesting that Powell had any reason or motive to do so. Armond's claims against Powell are not merely frivolous, but malicious.

## 6. Claims against defendant Beuke

Armond cannot sue defendant Beuke, his private defense attorney, under § 1983 because Beuke was not acting under color of state law. Beuke was not a state official, he was hired by Armond and his family, and was responsible only to Armond, not the state. A defense attorney can be found to be acting under color of state law if he or she conspires with state actors, *Tower v. Glover*, 467 U.S. 914 (1984), but, unlike Powell, Armond does not allege that Beuke conspired with the prosecutor or the police.

Moreover, even if Beuke had been a state actor, a claim that a criminal conviction resulted from defense counsel's professional errors is a challenge to the validity of that conviction. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Hampton v. Leibach*, 347 F.3d 219 (7th Cir. 2003)(failure to investigate and call exculpatory witnesses justified writ of habeas corpus). Consequently, *Heck* would bar a claim for damages under § 1983 unless and until Armond's conviction is overturned. Armond's conviction also bars any claim for legal malpractice under

Illinois law. Following decisions of the Illinois Appellate Court, the Seventh Circuit has held that a plaintiff suing his former criminal defense counsel must prove his own innocence, and cannot sue while his conviction stands. *Woidtke v. Clair County*, 335 F.3d 558, 564-65 (7th Cir. 2003); *Levine v. Kling*, 123 F.3d 580, 582 (7th Cir. 1997).

This action is accordingly dismissed in its entirety as frivolous, and the court finds that Armond's claims against Powell are malicious as well. This dismissal counts as one of plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g).

Because this action is dismissed as frivolous, Armond may not appeal this dismissal without prepayment of the $255 appellate filing and docketing fees unless he persuades this court or the Court of Appeals that the appeal is taken in good faith, that is, that there is some reasonable basis for the appeal. 28 U.S.C. § 1915(a)(3); *Lee v. Clinton*, 209 F.3d 1025 (7th Cir. 2000). Unless the appellate filing and docketing fees are prepaid, any notice of appeal should be accompanied by a statement of Armond's grounds for appeal.

Because Armond filed this suit while incarcerated, the $150.00 filing fee will be deducted in installments from his prison trust account pursuant to 28 U.S.C. § 1915(b). The trust fund officer at Armond's place of incarceration shall collect, when funds exist, an initial partial filing fee of $23.00 from Armond's trust fund account and pay it directly to the clerk of court. Thereafter, the trust fund officer at the correctional facility where Armond is confined shall collect monthly payments from Armond's trust fund account in an amount equal to 20% of the preceding month's income credited to the account. Monthly payments shall be forwarded to the clerk of court each time the amount in the account exceeds $10 until the full $150 filing fee is paid.

IT IS SO ORDERED.

Wayne R. Andersen, Judge
United States District Court

DATED: _____